UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TUBBY'S #14, LTD., et al,

        Plaintiffs,

v.

TUBBY'S SUB SHOPS, INC., et al,

        Defendants,
_____ /

CASE NO. 04-70918

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ON COUNTS I & II PURSUANT TO FED. R. CIV. P. 12(b)(6)

Now before the Court is Defendants' Motion to Dismiss Plaintiffs' Count I Racketeering Influenced and Corrupt Organizational Act ("RICO") and Count II Robinson-Patman Act claims. Having considered the entire record and having held a hearing on these counts, for the reasons that follow, the Court GRANTS Defendants' Motion to Dismiss on both claims.

**I.    FACTS**

Plaintiffs filed an eighteen count Original Complaint on March 11, 2004 against Defendants Tubby's Sub Shop ("Tubby's"), SUBperior Distribution Services, Inc. ("SDS"), SubLine Company ("SubLine"), Tubby's Sub Shops Advertising, Inc. (Tubby's Advertising"), Robert M. Paganes, Peter T. Paganes and Peggy Paganes (collectively "Defendants"). On April 7, 2004, Defendant Tubby's filed a counter claim for unpaid royalties, late fees and advertising fees. On May 19, 2005, Plaintiffs filed an 11 Count Amended Complaint alleging Violation of Racketeering Influenced and Corrupt Organizations Act, Violation of the Robinson-Patman Act, Violation of Michigan Franchise Investment Law, Common Law Fraud, Breach of Contract,

1

Breach of Covenant of Good Faith and Fair Dealing, Equitable Accounting and requesting a permanent injunction.

On July 6, 2005, Defendants filed a Motion to Dismiss, For Summary Judgment and to Extend Time on the 11 Counts in the Plaintiffs' Amended Complaint.[1]  Plaintiffs filed their Response on July 29, 2005.  Defendants filed their Reply on August 15, 2005.

Plaintiff Tubby's #14 and Tubby's 33 23 are Michigan corporations with their principal place of business in Sterling Heights, Michigan.  (Am. Compl. ¶ 1, 2).  Plaintiff Kulis Investment, Inc. is a Michigan corporation doing business or formerly doing business as Tubby's Sub Shop #0064 in Wixom, Michigan.  (Am. Compl. ¶ 3).  Plaintiff Lark Food Services, Inc. is a Michigan corporation which owns and operates Tubby's #0066 in Sterling Heights, Michigan.  (Am. Compl. ¶ 4).  Plaintiff TFD, Inc. is a Michigan corporation which currently (or formerly) owns and operates Tubby's Sub Shop #0089 in Taylor, Michigan.  (Am. Compl. ¶ 5).  Plaintiff TFI, Inc. is a Michigan corporation which currently (or formerly) owns and operates Tubby's Sub Shop #0107 in Eastpoint, Michigan.  (Am. Compl. ¶ 6).  Plaintiff FSM, Inc. is a Michigan

---

[1] The counts in Plaintiffs' Amended Complaint are:
| | |
|---|---|
| Count I: | Violation of Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 |
| Count II: | Violation of the Robinson-Patman Act, 15 U.S.C. § 13(c) |
| Count III: | Violation of Michigan Franchise Investment Law, M.C.L. § 445.1505 |
| Count IV: | Common Law Fraud - Kickbacks |
| Count V: | Breach of Express Contract - Kickbacks |
| Count VI: | Breach of Covenant of Good Faith and Fair Dealing |
| Count VII: | Breach of Contract - Refusal to Approve Sales of Franchises |
| Count VIII: | Violation of the Michigan Franchise Investment Law, M.C.L. 445.1505 |
| Count IV: | Accounting for Use of Advertising Fees |
| Count X: | Fraud - Failure to Comply with Federal Trade Commission Act |
| Count XI: | Injunction |

corporation doing business as Tubby's Sub Shop #0016 in Livonia, Michigan. (Am. Compl. ¶ 7). Plaintiff Williams #25, Inc. is a Michigan corporation which previously operated Tubby's Sub Shop #0025 in Troy, Michigan. (Am. Compl. ¶ 8). Plaintiff Atto Sub, Inc. is a Michigan corporation currently (or formerly) doing business as Tubby's Sub Shop #0148 in Troy, Michigan. (Am. Compl. ¶ 9). Plaintiff MJB Enterprises, Inc. is a Michigan corporation currently (or formerly) doing business as Tubby's Sub Shop #0148 in Troy, Michigan. (Am. Compl. ¶ 10). Plaintiff Manden Enterprises, Inc. is a Michigan corporation currently (or formerly) doing business as Tubby's Sub Shop #0022 in Taylor, Michigan. (Am. Compl. ¶ 11). Plaintiff S&J Orchard, Inc. is a Michigan corporation doing business as Tubby's Sub Shop #0020 in Orchard Lake, Michigan. (Am. Compl. ¶ 12). Plaintiff Cartolan, Inc. is a Michigan corporation formerly doing business as Tubby's Sub Shop #0091 in Detroit, Michigan. (Am. Compl. ¶ 13). Plaintiffs In Chung, an individual and ICC Enterprises, a Michigan corporation, both do business as Tubby's Sub Shop #0086 in Pontiac, Michigan. (Am. Compl. ¶ 14). Plaintiff AWW, Inc is a Michigan corporation doing business as Tubby's Sub Shop #0024 in Waterford, Michigan. (Am. Compl. ¶ 15). Plaintiff J&D Martin Enterprises, Inc. is a Michigan corporation formerly doing business as Tubby's Sub Shop #0091. (Am. Compl. ¶ 16). Plaintiff RM&M Tubby's, Inc. is a Michigan corporation doing business as Tubby's Sub Shop in Livonia, Michigan. (Am. Compl. ¶ 17). Plaintiff Edgewood Sub Shops, Inc. is a Michigan corporation formerly doing business as Tubby's Sub Shops #0072 in Commerce Twp., Michigan. (Am. Compl. ¶ 18). Plaintiff SubDude, LLC is a Michigan limited liability corporation doing business as Tubby's Sub Shops #0105 and #0129.[2] (Am. Compl. ¶ 19).

---

[2] All the plaintiff parties mentioned above are collectively referred to as "Plaintiffs."

Defendant Tubby's is a Michigan corporation with a principal place of business in Clinton Township, Michigan. (Am. Compl. ¶ 21). Tubby's franchises and manages franchises which sell submarine sandwiches. (Am. Compl. ¶ 31). Defendant SDS, SubLine, and Tubby's Advertising are Michigan corporations with their principal place of business in Clinton Township, Michigan. SDS is a subsidiary of Tubby's since its incorporation on January 3, 1998. (Am. Compl. ¶ 32). SDS is the purchaser of all products sold to and used by Tubby's franchisees. (Am. Compl. ¶ 32). SubLine is a subsidiary of Tubby's which provides franchisees with equipment and remodeling services. (Am. Compl. ¶ 33). Tubby's Advertising is a subsidiary of Tubby's and collects advertising money from franchisees and oversees the expenditures of those funds for the benefit of Tubby's and its franchises. Defendants Robert M. Paganes, Peter T. Paganes and Peggy Paganes, are individuals who have been the sole shareholders, Directors and Officers of Tubby's and its entities. (Am. Compl. ¶ 33). They control all day to day operations of Tubby's and it entities. (*Id*.).

In 1997, Tubby's formed SDS to enter into agreements with food manufacturers and other distributors of products used by Tubby's franchises. (Am. Compl. ¶ 41). After entering into agreements with product manufacturers, SDS would administer the warehousing and distribution of the products, take orders from and deliver such products to franchisees and then invoice the franchisees for the products. (Am. Compl. ¶ 43). Tubby's franchisees were required to purchase their products from SDS. Dan Kauble ("Kauble") was hired to Tubby's to set up the SDS distribution system. (Pl.'s Br. 2).

Plaintiffs claim that Robert Paganes, Tubby's President, and Kauble set up a scheme where Kauble "negotiated product purchase contracts with manufacturers which included

4

substantial kickbacks paid by the manufacturers to Tubby's." (*Id*.). Plaintiffs allege that SDS then added an additional mark up to the manufacturers' invoices when it resold the goods to the franchisees. When SDS paid the manufacturers' invoices, the manufactures paid Tubby's a kickback. According to the Plaintiffs, the kickback scheme consisted Tubby's asking their manufacturers to increase prices by 30 - 90%, and then to bill SDS at the inflated amounts. (Am. Compl. ¶ 45). When billing the franchisees, SDS would add its overhead and profit to the amount submitted by the manufacturers.[3] (*Id*.). Upon receiving the bill, Plaintiffs and other franchisees would pay the SDS invoices, SDS would then pay the manufactures the entire invoice amount, and in return, the manufacturers would pay SDS the kickback. (*Id*.). Plaintiffs contend that Tubby's expanded its scheme to include sales of equipment, conversion of the franchisees' money in their Pepsi Flex Fund, and advertising fees paid by the franchisees. (Pls.' Br. 2-3).

Defendants move to dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Defendants argue that Plaintiffs' RICO claim should be dismissed because the Amended Complaint does not contain the required specificity, e.g., state the time, place, or contents of the sender/recipient of any mailings, or, the participants in any telephone call.

Defendants further argue that Plaintiffs' Robinson-Patman claim should be dismissed, inter alia, because neither SDS or Tubby's received anything of value, the transaction did not include an allowance in lieu of brokerage, Plaintiffs do not allege commercial bribery, and

---

[3] Plaintiffs claim that the bills to the franchisees consisted of: 1) the Product Manufacturers original prices; 2) the amount of the kickback; and 3) SDS' overhead and profit.

Plaintiffs did not suffer an antitrust injury.

Plaintiffs argue that they properly plead their RICO and Robinson-Patman claims.

### III. ANALYSIS

#### a. Standard

A complaint brought under Federal Rule of Civil Procedure 12(b)(6) should not be dismissed for failure to state a claim, "unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." *Hoover v. Ronwin*, 456 U.S. 558, 587, 104 S. Ct. 1989; 80 L. Ed. 2d 590 (1984). For purposes of a motion to dismiss, the pleadings and affidavits are viewed "in a light most favorable to the Plaintiff." *Niemi v. NHK Spring Co.*, 276 F. Supp. 2d 717 (E.D. Mich. 2003). All factual allegations and any inferences derived from those allegations must be accepted as true. *Cheriee Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994).

#### b. Discussion

##### 1. Violation of Racketeer Influenced and Corrupt Organizations Act (Count I)

Defendants' argue that the circumstances constituting fraud in Plaintiffs' RICO claim are not stated with particularity and therefore should be dismissed. (Defs.' Br. 3-4). Defendants' assert that the claims under this count are so numerous that it would be very difficult to prepare or present at trial without the required specificity. (*Id*. at 3). Defendants' also contend that Plaintiffs have refused to supply the necessary information. (*Id*.).

Plaintiffs argue that they described the actions taken by Defendants resulting to their RICO claim in paragraphs 35-64 of their Complaint. (Pls.' Resp. 4). Additionally, Plaintiffs

argue that Defendants were made aware of the specific facts on which the RICO claim are based through the Plaintiffs' depositions. (*Id*. at 5). Further, Plaintiffs contend that the principal purpose of Federal Rule of Civil Procedure 9(b)'s particularity requirement is to ensure that the defendant receive fair notice of the alleged misconduct or fraudulent acts complained of in the Complaint. (*Id*. at 6). Plaintiffs aver that Defendants should understand the nature of the fraud claims, as they have spent over 16 months in active discovery. (*Id*.).

"For a defendant to have fair notice of the grounds of a RICO claim, a plaintiff must do more than . . . claim that the defendant violated some portion of [18 U.S.C. §] 1962. To allege the elements of the cause of action, the plaintiff must reveal which subsection of section 1962 the defendant allegedly violated, for each subsection has different elements. Then, to give the defendant fair notice of the grounds of the claim, the plaintiff must allege which of the defendant's actions allegedly violated that subsection of RICO." *Gore v. Eichholz*, 1992 WL 96316, *2 (S.D. Ga. 1992). Additionally, a RICO plaintiff must describe the enterprise that is involved in the pattern of racketeering, as defined by section 1961(4) of the RICO statute.[4] 18 U.S.C. § 1962; *see H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989).

In addition to describing the enterprise, a RICO plaintiff also must allege a pattern of racketeering activity. *Northwestern Bell*, 492 U.S. at 233. "To be considered a 'pattern,' predicate acts must be related and must 'amount to or otherwise constitute a threat of, *continuing* criminal activity.'" *Hindes v. Castle*, 937 F.2d 868, 872 (3d Cir. 1991) (quoting *Northwestern Bell*, 492 U.S. at 240). The term "pattern" requires at least two acts of racketeering activity

---

[4] "Enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1964(4).

within a 10-year period. 18 U.S.C. § 1961.

A plaintiff must plead mail and wire fraud with the specificity and particularity required by Federal Rule of Civil Procedure 9(b).[5] FED. R. CIV. P. 9(b). Where a plaintiff relies upon mail or wire fraud to constitute a predicate act under RICO, Rule 9(b) requires that he must allege, at a minimum, the time, place and contents of the fraudulent communications. *Moon v. Harrison Piping Supply*, 375 F. Supp. 2d 577, 592 (E.D. Mich. 2005).

The predicate acts pleaded in the Amended Complaint are as follows:

Beginning in 1997 to the present, Defendants have engaged in a scheme to defraud the Plaintiffs and other franchisees of property, causing damages to their businesses and finances. In furtherance of the scheme, Defendants executed and/or attempted to execute the Schemes to Defraud the Plaintiffs by harassing and intimidating them to follow Defendants' scheme though the U.S. Mail and through the use of a series of telephone calls and though documents transmitted by facsimile. Also in furtherance of the scheme, Defendants harassed and intimidated Plaintiffs to comply with the scheme through extortion and conspiring to do so.

Although Plaintiffs' Amended Complaint does identify specific RICO subsections that were allegedly violated and identifies the enterprise involved, it does not plead time, place, or contents of the fraud with specificity. The Amended Complaint alleges that there was a scheme to defraud, but it does not identify the exact times and specific acts that constituted fraud for purposes of the RICO claim. Further, while Plaintiffs allege continuing criminal activity in an effort to establish a pattern of racketeering activity, Plaintiffs are not specific enough for the

---

[5] Federal Rule of Civil Procedure 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

Court to confirm that two or more acts occurred within a 10 year period.  Plaintiffs only broadly reference 3 general acts that "occurred with some frequency over at least a 6 year period."  (Am. Compl. ¶ 74).  Additionally, Defendants did not file an Answer to Plaintiffs' Amended Complaint.  Plaintiffs, therefore, had two months between the filing of their Amended Complaint and the filing of Defendants' Motion to Dismiss, to amend their Complaint on their RICO claim if they felt it necessary.  Plaintiffs chose not to further amend their Complaint.

The Court finds that Plaintiffs failed to allege their RICO claim with particularity and therefore failed to state a claim upon which relief can be granted.  Accordingly, the Court grants Defendants Motion to Dismiss Plaintiffs' RICO count.

### 2. Robinson-Patman Act (Count II)

Defendants argue that Plaintiffs have not stated a claim for which relief can be granted.  Defendants claim that neither SDS nor Tubby's received anything of value from the kickbacks, making section 13(c) of the Act, which prohibits an actual discount from an established price for a phoney reason, inapplicable.  Defendants claim that the transaction does not involve an allowance in lieu of brokerage, and that Plaintiffs do not allege commercial bribery.  Defendants also aver that Plaintiffs cannot show damage from the violation and have not suffered an antitrust injury.

Plaintiffs argue that Kauble bribed manufacturers and therefore they allege commercial bribery sufficient to plead a violation of 15 U.S.C. § 13(c).[6]  Plaintiffs assert that Defendants breached a legal duty owed to them when Defendants did not pass along the cost savings that were promised.  Additionally, Plaintiffs claim that they allege facts sufficient to establish

---

[6] 15 U.S.C. § 13(c) is section 2(c) of the Robinson-Patman Act.

antitrust injury. Plaintiffs argue that the prices of products were inflated by the amount of the kickback, which reduced their profit margins because competition prevented them from increasing the menu prices enough to recover their costs. Further, Plaintiffs allege that they could only purchase from SDS, which prevented them from buying the same products at lower prices.

Section 2(c) of the Robinson-Patman Act provides that:

> It shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, . . . except for services rendered in connection with the sale or purchase of goods, wares, or merchandise . . .

15 U.S.C. § 13(c). The Robinson-Patman Act was enacted in 1936 to curb price discrimination benefitting large chain stores, which were able to use their purchasing power to extract preferential purchasing terms as compared to smaller stores. *FTC v. Harry Broch & Co.*, 363 U.S. 166, 168 (1960). Section 2(c) was directed at preventing such retailers from using "dummy brokerage fees as a means of securing price rebates." *Id.* at 169. In the Sixth Circuit, section 2(c) reaches commercial bribery as well as discrimination. *See Fitch v. Kentucky-Tennessee Light & Power Co.*, 136 F.2d 12, 14 (6th Cir. 1943). Stating allegations sufficient to establish commercial bribery is a necessary requirement for stating a claim of commercial bribery . *Blue Tree Hotels v. Starwood Hotels and Resorts*, 369 F.3d 212, 222 (2nd Cir. 2004). "Commercial bribery cannot be committed unilaterally by an alleged bribe receiver: one cannot be guilty of receiving a commercial bribe unless someone else is guilty of paying it." *Id*.

"The private cause of action for antitrust violations is provided in section 4 of the Clayton Act, which states that 'any person who shall be injured in his business or property by

10

reason of anything forbidden in the antitrust laws may sue therefore in any district court of the United States.'" *In Town Hotels v. Marriot International*, 246 F. Supp. 2d 469, 474 (S.D. W.V. 2003) (citing 15 U.S.C. 15(a)). A private party who is injured due to actions in violation of antitrust laws may bring a private suit, but must prove an antitrust injury. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). An antitrust injury is an "injury the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful." *Valley Products Company, Inc. v. Landmark,* 128 F.3d 398, 402 (6th Cir. 1997) (citing *Brunswick Corp.*, 429 U.S. at 489).

In *Blue Tree Hotels v. Starwood Hotels and Resorts*, the plaintiff alleged that defendant entered in to agreements with vendors where the vendors would pay "allowances, bonuses, charges, commissions, credits, discounts, fees, incentives, profits, rebates, and/or kickbacks to defendants." 369 F.3d at 221. The court stated that based on the plaintiff's allegations, the plaintiff claimed that the defendant engaged in a kickback scheme constituting commercial bribery. *Id*. The court further commented that the claim was premised on the fact that the plaintiffs labeled the payments kickbacks and because of the label kickbacks, the plaintiffs believed the payments were commercial bribery. However, the court found that "[s]ubstituing the [plaintiff's] repeated use in their complaint of the freighted work 'kickback' with the more benign 'vendor payment' reveals that the [plaintiff has] not alleged any improper intent or conduct on the part of the vendors who made the payments to [the defendant]."[7] *Id*.

---

[7] The court declined to follow the district court which held that only vendors of hotel supplies who directly compete with the vendors who made the payments had standing to sue for the alleged section 2(c) violation arising from the challenged vendor payments. *Id*. at 218. The court instead found that the "district court erroneously imposed a 'competitive injury' requirement applicable to a prima facie violation of section 2(a)." *Id*. at 218-19. Competitive

In the instant case, there is an absence of any allegations in the Amended Complaint that the manufacturers payments were bribes paid by the manufactures with the intent to improperly influence or corrupt Tubby's. Plaintiffs allege that it was Defendants that committed bribery. According to Plaintiffs, Defendants entered into agreements where the manufacturers would pay kickbacks to Defendants once the manufacturers invoices were paid. Plaintiffs contend that Defendants bribed manufacturers by informing them that if they participated in the kickback scheme, Defendants would go to them for all their business. However, Plaintiffs claim is premised on the fact that they called the payments made by the manufacturers "kickbacks" and because the manufacturers paid the "kickbacks," Defendants are therefore guilty of commercial bribery. But calling the payments "vendor payments" reveals that Plaintiffs have not alleged any improper intent or conduct on the part of the vendors who made the payments to Defendants.

Further, Plaintiffs' Amended Complaint only alleges that Defendants received "a significant benefit in the form of kickbacks." (Am. Compl. ¶ 89). The fact that Defendants offered to only do business with companies who pay an extra fee does not meet the definition of bribery, which is defined as the "[g]iving, offering, or promising commission, gift, or gratuity to agent, employee, or other person with intent to influence action of agent or employee." M.C.L. § 750.125.

Plaintiffs do not allege that the manufacturers payments themselves were improper, only that kickbacks were a benefit to Defendants. In fact, the alleged manufacturers' payments were

---

injury is not a element of a prima facie violation of section 2(c). *Id*. at 220.

not payments by the manufacturer at all, because the payments did not come out of the manufacturers' pockets.  The payments were actually paid by the franchisees in the form of an overcharge on the product invoices.  The manufacturers are simply giving SDS back the money SDS overcharged the franchisees.  A franchisor overcharging the franchisee may constitute a breach of fiduciary duty and Plaintiffs do allege that Defendants breached a legal duty owed to them by not passing along such cost savings.[8]  (Pls.' Resp. 8).  *See Blue Tree*, 369 F.3d at 222.[9] However, there was no money paid by the manufacturers out of their pockets and therefore no bribe by the manufacturers.  The fact that Defendants only would do business with manufacturers who would over-bill SDS also does not constitute a bribe.  Plaintiffs' basis for this claim is that Defendants retained the money in breach of its fiduciary duty - not that the manufacturers were making the payments.  As a result, Plaintiffs do not state a claim for a violation of the Robinson-Patman Act.  Accordingly, the Court grants Defendants' Motion for Summary Judgment on Plaintiffs' Robinson-Patman claim.[10]

---

[8] Plaintiffs make this allegation in their Response to Defendants' Motion and not as a count in their Amended Complaint.

[9] "Improper intent on the part of the vendors might be inferred from the [plaintiffs'] allegations that vendors who were unwilling or unable to make the vendor payments were precluded from competing for the [plaintiffs'] business and, as a result, the [plaintiffs] were unable to negotiate advantageous prices and terms with such vendors.  But such an inference is belied by the letters to the [plaintiffs'] complaint in which the [plaintiffs] objected to the manner in which [the defendant] was allocating vendor payments.  These letters contain no assertion that vendor payments are illegal or made pursuant to illicit agreements between [defendant] and the vendors to act contrary to the [plaintiffs'] interests." *Id*.

[10] Even if Defendants' actions were found to be bribery, Plaintiff still would not have suffered an antitrust injury.  "We do not think that paying inflated purchasing prices to vendors, without more, is 'an injury of the type the antitrust laws were intended to prevent . . . that flows from that which makes the defendants' acts unlawful." *2660 Woodley Road Joint Venture v. IT Sheraton Corp.*, 369 F.3d 732, 738-39 (6th Cir. 2004).

**SO ORDERED**.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  December 29, 2005

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on December 29, 2005.

s/Jonie Parker
Case Manager